IN THE CIRCUIT COURT FOR THE 11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION



SOUTH MIAMI HOLDINGS, LLC,
a Florida limited liability company,

CASE NO: 08-59108 CA 23

     Plaintiff,

v.

SUN AMERICAN BANK,
a Florida Corporation,

     Defendant.

_____/

## FOURTH AMENDED COMPLAINT

Plaintiff South Miami Holdings, LLC, by and through its undersigned counsel, sues Defendant Sun American Bank, and as grounds therefore alleges as follows:

1.    This is an action in excess of fifteen thousand dollars ($15,000.00) exclusive of court costs and interest.

2.    South Miami Holdings, LLC, ("South Miami Holdings") is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida and otherwise *sui juris*.

3.    Sun American Bank ("Sun American") is a Florida corporation with offices in Miami-Dade County, Florida and otherwise *sui juris*.

4.    On or about February 25, 2008, South Miami Holdings and Sun American entered into a Loan Commitment Agreement (hereinafter referred to as the "Agreement") for the refinancing of 200 Condominium units located at Cutler Gardens, a Condominium



EXHIBIT
A

with its address at 10820 SW 200 Drive, Miami, Florida (hereinafter referred to as the "Property"). Such Agreement is attached hereto as Exhibit "A" of this Complaint.

5. On or about March 25, 2008, South Miami Holdings tendered, and Sun American accepted, the Loan Commitment fee and the Appraisal fee pursuant to the Agreement.

6. On June 6, 2008, Sun American agreed to amend the Agreement to cap the maximum interest on the subject loan and reduce the floating interest rate on the subject loan. Said amendment is attached hereto as Exhibit "B" of this Complaint.

7. On July 11, 2008, Sun American, by and through its counsel, unilaterally cancelled the subject loan alleging: a) failure by South Miami Holdings to disclose a mortgage on the Property; b) misrepresentation by South Miami Holdings as to its ownership structure; and c) unacceptable title problems, to wit, a violation of the Unity of Title on the Property. Said correspondence is attached hereto as Exhibit "C" of this Complaint.

8. On July 16, 2008, counsel for South Miami Holdings responded and refuted each and every allegation made by counsel for Sun American. No response was ever received to this correspondence, attached hereto as Exhibit "D" of this Complaint.

9. On August 12, 2008, counsel for South Miami Holdings again wrote to counsel for Sun American demanding a closing date for the subject loan. A copy of such correspondence and Sun American's response is attached hereto as Exhibit "E" (composite) of this Complaint.

10. On or about August 14, 2008 counsel for Sun American, Betty Capote, Esq. of Capote & Capote, P.A., advised counsel for South Miami Holdings that Sun-

American was renouncing its claims of lack of disclosure and misrepresentation, but that Sun American refused to renounce its claim that South Miami Holdings had violated the Unity of Title on the subject Property and that said violation was a cloud on title rendering the Property unvendible.

11.    During the course of such communications, counsel for Sun American suggested that South Miami Holdings obtain an opinion letter from Miami-Dade County regarding the Unity of Title.

12.    On August 27, 2008, counsel for South Miami Holdings submitted to Sun American 1) the opinion of Miami-Dade County clarifying that the subject property is not in violation of the Unity of Title, and therefore that it was in no way encumbering the Property, and 2) a final demand to close on the subject loan. Such correspondence, which received no response from Sun American, is attached hereto as Exhibit "F" of this Complaint.

13.    Sun American's actions, including those conducted through its agents as detailed above, prevented the subject loan from closing. As a result, South Miami Holdings was forced to seek alternative financing at a higher interest rate and less favorable structure, wrongfully lost the substantial Loan Commitment and Appraisal fees which it paid and Sun American accepted, and incurred other costs and expenses, including attorneys' fees, which it would not have incurred but for Sun American's improper actions.

14.    All conditions precedent have been complied with and/or have been waived.

3

## COUNT I
### (Breach of Express Contract)

15.     South Miami Holdings re-alleges Paragraphs 1 through 14 above and incorporates such allegations herein in support of this count.

16.     Sun American's actions constitute a breach of the Agreement.

17.     South Miami Holdings has been damaged as a result of Sun American's breach of the Agreement.

18.     Sun American's breach of the Agreement has caused South Miami Holdings to suffer actual, compensatory damages, including but not limited to being forced to seek alternative financing at a higher interest rate and less favorable structure, losing the substantial Loan Commitment and Appraisal fees which it paid and Sun American accepted, and incurring other costs and expenses which it would not have incurred but for Sun American's breach.

**WHEREFORE,** South Miami Holdings demands entry of judgment against Sun American for the full amount of South Miami Holdings' actual, compensatory damages plus interest and such other relief as the Court deems just and proper.

## COUNT II
### (Breach of Implied-in-Fact Contract)

19.     South Miami Holdings re-alleges Paragraphs 1 through 14 above and incorporates such allegations herein in support of this count.

20.     An implied-in-fact contract is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words.

21.     Here, Sun American and South Miami Holdings entered into the Agreement and subsequently addressed three purported issues raised by Sun American:

4

a) failure by South Miami Holdings to disclose a mortgage on the Property; b) misrepresentation by South Miami Holdings as to its ownership structure; and c) unacceptable title problems, to wit, a violation of the Unity of Title on the Property.

22.    Sun American subsequently renounced any issues it had regarding the purported lack of disclosure and misrepresentation, and South Miami Holdings provided Sun American with the opinion of Miami-Dade County clarifying that the subject property was not and is not in violation of the Unity of Title

23.    Based on the foregoing, including the parties' conduct, South Miami Holdings and Sun American had a valid implied-in-fact contract for the refinancing of the Property.

24.    Sun American has breached this implied-in-fact contract.

25.    South Miami Holdings has suffered damages as a result of Sun American's breach, including but not limited to being forced to seek alternative financing at a higher interest rate and less favorable structure, losing the substantial Loan Commitment and Appraisal fees which it paid and Sun American accepted, and incurring other costs and expenses which it would not have incurred but for Sun American's breach.

**WHEREFORE**, South Miami Holdings demands entry of judgment against Sun American for the full amount of South Miami Holdings' actual, compensatory damages plus interest and such other relief as the Court deems just and proper.

## COUNT III
### (Breach of Implied Duty of Good Faith and Fair Dealing)

26.     South Miami Holdings re-alleges Paragraphs 1 through 14 above and incorporates such allegations herein in support of this count.

27.     Florida law recognizes an implied duty of good faith and fair dealing in every contract.

28.     The covenant is intended to protect the reasonable expectations of the contracting parties in light of their express agreement.

29.     Sun American assumed a duty of good faith and fair dealing, and owed this duty to South Miami Holdings, in connection with the Agreement.

30.     Sun American has breached the implied covenant of good faith and fair dealing here by failing to fulfill its obligation to provide the financing set forth in the Agreement and to which it specifically agreed.

31.     South Miami Holdings has suffered damages as a result of Sun American's breach, including but not limited to being forced to seek alternative financing at a higher interest rate and less favorable structure, losing the substantial Loan Commitment and Appraisal fees which it paid and Sun American accepted, and incurring other costs and expenses which it would not have incurred but for Sun American's breach.

**WHEREFORE,** South Miami Holdings demands entry of judgment against Sun American for the full amount of South Miami Holdings' actual, compensatory damages plus attorneys' fees pursuant to the Wrongful Act doctrine, court costs, interest and such other relief as the Court deems just and proper.

6

## COUNT IV
### (Negligent Misrepresentation)

32.    South Miami Holdings re-alleges Paragraphs 1 through 14 above and incorporates such allegations herein in support of this count.

33.    Sun American misrepresented to South Miami Holdings that it would provide South Miami Holdings with the subject loan for the refinancing of the Property.

34.    Sun American either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false.

35.    Sun American intended to induce South Miami Holdings to enter into the Agreement based on the aforementioned representation.

36.    South Miami Holdings relied on Sun American's representation and as a result entered into the Agreement.

37.    South Miami Holdings has been damaged as a result of its entering into the Agreement, which was a direct result of its reliance on Sun American's misrepresentation.

**WHEREFORE**, South Miami Holdings demands entry of judgment against Sun American for the full amount of South Miami Holdings' actual, compensatory damages plus attorneys' fees pursuant to the Wrongful Act doctrine, court costs, interest and such other relief as the Court deems just and proper.

## COUNT V
### (Promissory Estoppel)

38.     South Miami Holdings re-alleges Paragraphs 1 through 14 above and incorporates such allegations herein in support of this count.

39.     Even in advance of formally entering into the Agreement, Sun American promised and represented to South Miami Holdings that it would refinance the Property.

40.     Sun American reasonably should have expected that its promise would induce South Miami Holdings not only to proceed with obtaining financing from Sun American and making all necessary arrangements on its end to close the transaction, but also to refrain from seeking the same or similar financing from another bank or lending source.

41.     Sun American's promise induced South Miami Holdings not only to proceed with obtaining financing from Sun American (including entering into the Agreement) and making all necessary arrangements on its end to close the funding transaction, but also to refrain from seeking the same or similar financing from another bank or lending source.

42.     Injustice can be avoided only by enforcement of Sun American's promise, as South Miami Holdings has been damaged by the inducements to which Sun American's promise led, including but not limited to being forced to seek alternative financing at a higher interest rate and less favorable structure, losing the substantial Loan Commitment and Appraisal fees which it paid and Sun American accepted, and incurring other costs and expenses which it would not have incurred but for Sun American's promise and subsequent improper actions.

8

**WHEREFORE**, South Miami Holdings demands entry of judgment against Sun American for the full amount of South Miami Holdings' actual, compensatory damages plus attorneys' fees pursuant to the Wrongful Act doctrine, court costs, interest and such other relief as the Court deems just and proper.

CLARKE SILVERGLATE & CAMPBELL, P.A.
Attorneys for South Miami Holdings, LLC
799 Brickell Plaza
Suite 900
Miami, Florida 33131
Telephone: 305.377.0700
Facsimile: 305.377.3001
Email: mcordis@csclawfirm.com

By:_____
　　DENNIS M. CAMPBELL
　　Florida Bar No. 271527
　　MATTHEW K. CORDIS
　　Fla. Bar No. 0590541

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent

on this 7th day of December 2009 to the following:

<u>Via U.S. mail and electronic mail:</u>

Stephen A. Mendelsohn, Esq
Greenberg Traurig, P.A.
5100 Town Center Circle, Suite 400
Boca Raton, FL 33486
Telephone (561) 955 7670
Fax (561) 338 7099
*Counsel for Sun American Bank*


MATTHEW K. CORDIS

10

# EXHIBIT "A"



SUN AMERICAN BANK

February 25, 2008

SOUTH MIAMI HOLDINGS, LLC.
A Florida Limited Liability Company
Julio Lago
8700 W Flagler St Ste 165
Miami, Florida 33174

RE:   LOAN TO SOUTH MIAMI HOLDINGS, LLC, SECURED BY A FIRST MORTGAGE ON
TWO HUNDRED (200) CONDOMINIUM UNITS AND ONE (1) COMMERCIAL UNIT LOCATED
AT 10820 SW 200 DR. MIAMI, FLORIDA

Gentlemen:

Based upon the information submitted constituting your application for the above referenced Loan, SUN
AMERICAN BANK ("Bank") is pleased to extend to you the following Commitment ("Commitment").  When accepted
by you, providing that such acceptance is received within the time hereinafter set forth, this letter will stand as and for the
Commitment between the Bank and the Borrowers.  The terms and conditions of this Commitment are as follows:

1.      Borrowers:    South Miami Holdings, LLC a Florida limited liability company ( the "Borrower").

2.      Guarantor:   Eduardo Cardero , Julio and Anais Lago, Francisco and Rosa Torres, Leandro and Isabel
Lemus, Eduardo and Elena Garcia, Juan Carlos and Zaida Lago, Anthony R and Mary
Cecchini ( collectively "Guarantors"), jointly and severally.

3.      Amount of Loan:   The aggregate principal amount will not exceed the lesser of (i) Fifteen Million
($15,000,000.00) Dollars or 75% of the Income approach and of the bulk discounted sale value based on
the sale of a single buyer.

4.      Purpose:
To refinance existing Great Florida Bank's first mortgage loan on the Property, as defined herein below, with a
current balance of $13,000,000.00 and to payout investors.

5.      Interest Rate:

WSJ plus 0.25% floating (currently 6.25%) percent per annum, 5 ¼ %.  The interest rate shall be calculated
on the basis of a 365/360 day year for the actual number of days elapsed.

6.      Commitment Fee:
                              0.50
Seventy Five (0.75 %) basis point of the Loan amount.  The foregoing commitment fee of $112,500.000   20,000.00
shall be due and payable in full upon acceptance of this Commitment Letter.  Such Commitment fee shall be
considered earned by the Bank and shall be retained by the Bank whether or not the Loan closes.

7.      Repayment Terms:

Monthly payments of interest only commencing one (1) month from the day of closing.  Principal is payable at
maturity.  The Partial Release fee for each condominium unit being released shall be $250.00.  The Release
Prices shall be computed to the sum equal to the greatest of:  (i) Ninety (90%) percent of the gross sales price of
the condominium unit being released, or (ii) one hundred and twenty (120%) percent of the prorated gross Loan

1

amount for each condominium unit based on the proportion of the gross Loan amount which the total square footage of the unit being released bears to the total square footage of all of the units described in Exhibit "A" hereto. LTV on residual units not to exceed 75% based on an Income Approach Value and a 1.25 debt coverage ratio shall be maintained.

8.   **Maturity:**

Twenty Four (24) months after closing with an option to extend the loan for an additional six (6) months upon a 0.25% extension fee for a maximum term of thirty (30) months. Said option to extend is subject to: (i) Borrower's satisfactory assessment on the Loan; (ii) the Bank's satisfactory assessment that there has been no deterioration in the financial condition of the Borrower and/or Guarantors.

9.   **Collateral:** First mortgage on one two hundred (200) condominium units and one Commercial Unit located at 10820 S.W. 200 DR Miami, Florida, more particularly described in Exhibit "A" attached hereto (the "Property"), together with all present and future improvements to be constructed thereon, assignment of all present and future purchase and sales agreements, leases, and all other tangible and intangible assets associated with the Property. Title to all the Property will be held in the name of South Miami Holdings, LLC. Additionally, a certificate of deposit in the amount of $170,000.00, in order to achieve the required debt service as required by the Bank.

10.  **Expenses Incurred in Connection with Loan:** The Loan shall be made without cost to Bank whether or not the Loan closes. Borrowers and Guarantor, jointly and severally, shall be responsible for the prompt reimbursement to Bank of all costs incurred by Bank, including, but not limited to, attorneys' fees, documentary stamps, intangible taxes, appraisal fees, inspections, title insurance and title search expenses, recording charges and expenses incurred in connection with the Loan for tax service fee, for flood determination, and for a future satisfaction of mortgage fee), whether or not the Loan is closed.

11.  **Preparation or Review of Documents:** It is a condition to any obligation of Bank that all documents to be used in connection with closing and funding of the Loan be acceptable to Bank in its sole discretion and judgment. In this regard, Bank shall have the right to designate legal counsel satisfactory to it to prepare or review such documents.

12.  **Loan Closing Requirements:**

A.   **Loan Documents:** The Borrowers and Guarantor agree to execute or cause to be executed by all required parties, all of the loan documents or other legal instruments required by Bank to insure, inter alia, that Bank obtains a valid first and prior lien on the Property in the amount of the Loan and to insure the Borrowers' and Guarantor's personal liability and unconditional obligation for the full repayment of the Loan. The Note, Mortgage, Loan Agreement, Security Agreement and Guaranties will contain a waiver of a jury trial in any action arising out of this transaction. There will be a late charge equal to five percent (5.0%) of any amounts due Bank which are not paid within ten (10) days from the due date for payment of same.

1.   The Loan Documents will also contain provisions regarding the following and such other matters as deemed desirable by Bank's Counsel.

(a)   The requirement that real estate taxes be paid no later than December 31 of the year for which the same are applicable.

(b)   Prohibitions against placing or permitting any subordinate mortgages or other liens against the Property or leasing or pledging the Property or any fixtures, equipment or personal property used in the operation of the Property without the Bank's prior written consent.

2

(c)     A due on sale clause subject to the partial release provisions set forth herein. The Loan shall also be due and payable upon any sale, transfer, pledge or conveyance of any interest in Borrowers.

(d)     Borrowers and Guarantor will execute environmental compliance and indemnity agreements in a form satisfactory to Bank.

(e)     Except as otherwise set forth in this Commitment, the Loan may be prepaid in whole or in part without penalty.

(f)     Borrower will provide copy of current operating agreement to establish ownership interests in the borrowing entity.

(g)     Borrower will provide evidence of outstanding liens by Cutler Gardens Condominium association have been cleared.

(h)     Borrower will provide schedule of all improvements made to the property and a breakdown of the total cost to improve.

(i)     Borrower will confirm that the grocery store is legally permitted and zoned to operate on the premises.

(j)     Sun American Bank will participate necessary loan amount in order not to exceed legal lending limits.

(j)     Background of Rosa Torres to exclude her as a match to OFAC.

B.     **Special Conditions:**  As a further condition to any obligation on the part of the Bank to close the Loan, Borrowers, at their expense, shall furnish Bank with the following, all of which must be satisfactory to the Bank and its Counsel, and Bank's engineer where applicable, in their sole judgment:

1.     **Appraisal.**  Borrowers, at Borrowers' expense, shall provide Bank with a current appraisal of the Property rendering a maximum Loan to Value ratio of 75% based on income approach and on a discounted gross sellout basis to a single buyer.  Said appraisal must be acceptable to Bank, at the Banks' sole discretion, and shall be performed by an appraiser acceptable to Bank.

2.     **Hazard, Windstorm, Flood, and Liability Insurance.**  Fire and extended coverage, including windstorm, and such other hazard insurance as Bank may require, issued by an insurance company satisfactory to Bank, must be provided with loss payable to Bank.  If this Property is located in a flood area, Bank shall also require flood insurance at closing in the amounts required by Bank.  At all times, Borrowers will carry liability insurance in an amount not less than $1,000,000.00.  All insurance policies shall name Bank as an additional insured/loss payee.  Borrowers shall provide such other forms of insurance as Bank may reasonably require or as may be required by law.  All policies of insurance, or certificates and copies of the policies, shall be delivered to Bank prior to the date of closing together with evidence of payment of the premiums therefore covering the period of one year from the date of closing.  All policies shall be issued by insurers approved by Bank and contain such endorsements as Bank may reasonably require.  All such insurance shall be written in an amount sufficient to prevent the Borrowers from becoming a co-insurer under the applicable policies and shall not be terminable or alterable without thirty (30) days prior written notice to Bank.  Failure to maintain the required insurance during the term of the Loan shall constitute a default under the Loan Documents.

3

3.  Title Insurance.  A title insurance commitment from a title insurer in a standard ALTA (Loan Policy 1970 amended 10/17/70 and 10/17/84) form specifying the requirements for insuring the mortgage free and clear of all defects and encumbrances except such encumbrances which may be acceptable to Bank and its Counsel and including such title insurance endorsements as Bank may require, including, but not limited to a Florida Form 9 Endorsement, Variable Rate Endorsement, Condominium Endorsement and 8.1 Environmental Endorsement. The title insurer shall also provide a Closing Protection Letter to Bank.

4.  Corporate Documents.  Such documentation regarding the status of the borrowing and guaranteeing entities as may be required by Bank, including, but not limited to, good standing certificates, and evidence of the authority of the persons executing documents on behalf of Borrowers and Guarantor.

5.  Taxes.  Evidence of payment of 2007 and previous years real estate taxes on the Property.

6.  Counsel's Opinion Letter.  An attorney's opinion letter executed by counsel for Borrowers and Guarantor in the form and substance as provided by Bank.

7.  Financial Statements.  Current Financial Statements and copies of tax returns of Borrowers and Guarantor as Bank may request.

8.  Miscellaneous Agreement.  Copies of all agreements of any nature whatsoever affecting or relating to the Property.

9.  Violations and Open permits.  Evidence that no violations or open permits of record exists on the Property.

10.  Leases.  Copies (complete and fully executed) of all existing leases affecting the Property or any portion thereof.  All residential leases shall show the minimum monthly rent as specified in the rent roll previously submitted to Bank, and all such residential leases shall be for a minimum term of one (1) year each. All leases must be subordinate to the Loan and must be in form and substance acceptable to Bank.

11.  Rent Roll.  Current signed and dated rent roll for the Property.

12.  Purchase and Sale Agreements for units.  Copies of all existing purchase and sale agreements affecting the Property or any portion thereof, if any.  All purchase and sale agreements must be subordinate to the Loan and must be in form and substance acceptable to Bank.

13.  Conversion Inspection Report.  Copy of the existing property inspection report done when the condominium conversion for the Property occurred.

14.  Condominium Documents.  Copies of all condominium documents and master association documents affecting the Property, estoppel letters, condominium association budgets and financial statements, and master association budget.  No such documents may provide that the Property may not be sold to a single buyer.

15.  Payoff Letter and History Great Florida Bank loan.  Payoff letter from Great Florida Bank for the mortgage loan on the Property being refinanced with this Loan, and satisfactory payment history of such Great Florida Bank mortgage loan.

4

16.     Great Florida Bank loan. Proof that the existing Great Florida Bank mortgage loan on Borrowers' South Miami Holdings, LLC project is current.

17.     Evidence of No Litigation. Evidence that there is no pending or threatened litigation known to Borrowers or Guarantor against Borrowers, Guarantor, or the Property.

18.     Borrowers shall furnish to Bank at Borrowers' expense any additional documents or items not otherwise required by this Commitment as may be reasonably set forth by letter to Borrowers from Bank or Bank's Counsel.

13.   **Indemnification Re: Brokers:**  Borrowers and Guarantor, jointly and severally, agree to indemnify and hold harmless Bank from any and all claims for brokerage fees claimed by or through the Borrowers which may result from the making of the Loan or by Borrowers' acceptance of this Commitment.

14.   **Assignability:**  This commitment shall not be assigned by Borrowers.

15.   **Chattel Lien:**  Borrowers shall convey to Bank by appropriate instrument, as collateral security, a first lien on all fixtures, chattels and personal property owned by or assigned to Borrowers and used in the operation of the Property and supply at Borrowers' cost satisfactory evidence of the priority of such lien.

16.   **Annual Statements:**  Borrowers agrees to furnish, within ninety (90) days after the close of Borrowers' fiscal year, operating statements reflecting all material information with respect to the operation of the Property, which statements shall be either audited or certified by the appropriate officer of Borrowers.  Borrowers and Guarantor shall submit to Bank on an annual basis, current financial statements, including rent roll on a annual basis.

17.   **Bank Accounts:**  Prior to closing, Borrowers will open and maintain throughout the term of the Loan their operating accounts at Sun American Bank.  During the term of the Loan (a) Borrowers shall also maintain in an account at Sun American Bank the lease deposits account for the Property, and (b) the escrow agent for the deposits on any purchase contract for the sale of any condominium unit at the Property shall maintain its escrow account in an account at Sun American Bank.

18.   **Prepayment Fee:**  There will be no prepayment fee if Borrower prepays the Loan, in whole or in part, at any time during term of the loan

19.   **Closing:**  Provided Borrowers and Guarantor comply with all of the terms and provisions of this Commitment, the closing of the Loan shall be at Bank's offices or Bank's Counsel's office within thirty (30) days from the acceptance of this Commitment.  Unless the closing is held within such thirty (30) day period, the Bank's obligation hereunder will, at the Bank's option, terminate.

20.   **Cancellation of this Commitment:**  If, prior to the closing of the Loan, there should be filed by or against the Borrowers, or the Guarantor, any petition in bankruptcy, insolvency, or receivership proceedings, or in the event there should be any material (in the sole judgment of Bank) change in the financial condition of the Borrowers or the Guarantor, the Bank shall have and reserves the right to cancel this Commitment.

21.   **Modifications:**  Once accepted by Borrowers, the terms and conditions hereof may not be modified by the parties except by an instrument in writing signed between them and this Commitment will be and constitutes the entire agreement of the parties and all prior negotiations with regard to the Loan shall be deemed to have been merged herein.  All representation of the Borrowers in the form of documents and information submitted to the Bank shall be deemed to be, and continue to be, part of the basis upon which the Bank has relied in the issuance of this Commitment and the closing of the Loan.

5

22. **Time:** Borrowers understand and agree that time is of the essence in connection with this Commitment and the Loan.

23. **Survival:** This Commitment shall survive the closing of the Loan, provided however, that the Loan Documents shall be controlling wherever in conflict with the provisions hereof.

24. **Indemnification:** Borrowers hereby indemnifies and holds the Bank harmless against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs and expenses (including attorneys' fees, including at trial and all appellate levels) of whatever kind or nature which may be imposed on, incurred by, or asserted at any time against Bank in any way relating to or arising in connection with the offer or sale of the units or the Property and/or the use, occupation or operation of the property or the Property to be encumbered by the Bank's mortgage. Borrowers also hereby indemnifies and holds the Bank harmless of any and all costs and expenses (including attorneys' fees, including at trial and all appellate levels) incurred by Bank in connection with the enforcement of the terms of this Commitment.

25. **Applicable Law:** This Commitment and the performance hereunder shall be governed by the laws of the State of Florida.

26. **Provisions for Waiver of Trial by Jury:** BORROWERS AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT THAT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS COMMITMENT AND ANY DOCUMENTS CONTEMPLATED TO BE EXECUTED, IN CONJUNCTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF BORROWERS, GUARANTOR OR BANK. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BANK ENTERING INTO THIS COMMITMENT.

This Commitment shall expire fifteen (15) days from the date of this Commitment (the "Commitment Expiration Date"). This Commitment shall become effective upon the receipt by Bank at its offices on or before the date specified above of one (1) copy of the enclosed Commitment, duly executed and accepted by Borrowers and Guarantor together with a check in the amount of $118,000.00 representing 100% of the Commitment Fee and the appraisal fee.

If the above terms and conditions are acceptable to you, please have this Commitment signed where indicated by the Borrowers and Guarantor and return the original of this Commitment and a check for the above mentioned amount to my attention by no later than the Commitment Expiration Date.

Thank you for allowing us the opportunity to be of service to you. We look forward to a prosperous relationship in the years to come.

Very truly yours,

SUN AMERICAN BANK

By: _____

Name: MANUEL J VALIDO
SENIOR VICE PRESIDENT
REGIONAL LENDING MANAGER

6

COMMITMENT IS HEREBY ACCEPTED:

FOR THE BORROWERS

SOUTH MIAMI HOLDINGS, LLC
a Florida limited liability company

By: _____
     MARIA FUENTES, Manager

FOR THE GUARANTORS

By: _____
     EDUARDO CARDERO, Individually

By: _____
     LEANDRO LEMUS, Individually

By: _____
     ISABEL LEMUS, Individually

By: _____
     JULIO LAGO, Individually

By: _____
     ANAIS LAGO, Individually

By: _____
     FRANCISCO TORRES, Individually

By: _____
     ROSA TORRES, Individually

By: _____
     EDUARDO GARCIA, Individually

7

By: _____
ELENA GARCIA, Individually

By: _____
JUAN CARLOS LAGO, Individually

By: _____
ZAIDA LAGO, Individually

By: _____
ANTHONY R. CECCHINI, Individually

By: _____
MARY CECCHINI, Individually

8

EXHIBIT "A"

LEGAL DESCRIPTION LISTING ALL OF THE CONDOMINIUM
UNITS WHICH WILL BE ENCUMBERED BY BANK'S MORTGAGE

SEE ATTACHED RENT ROLL

FIRST CULTER GARDENS, LLC          2/1/08
RENT ROLL

| UNIT # | NAME | SQ FT | RENT | PROJECTED FUTURE RENT | ACTUAL LEASES |
|---|---|---|---|---|---|
| 101 S | GREEN, SANDRA | 625 | $815.00 | $850.00 | |
| 106 S | BLUM, GERI | 625 | $790.00 | $850.00 | $790.00 |
| 107 S | WILLIAM, GEURDA | 756 | $890.00 | $950.00 | $890.00 |
| 111 S | DESILVA, DANIEL | 756 | $890.00 | $950.00 | $890.00 |
| 115 S | SEYMOUR, C | 756 | $890.00 | $950.00 | $890.00 |
| 119 S | MADRIGAL | 756 | $890.00 | $950.00 | $890.00 |
| 120 S | MACON, JOHNY | 756 | $890.00 | $950.00 | $890.00 |
| 122 S | GONZALEZ, KIRK | 625 | $835.00 | $850.00 | |
| 123 S | CHAPPELL, MELISSA | 625 | $800.00 | $850.00 | |
| 125 S | ARAUJO, MAIRA | 625 | $750.00 | $850.00 | $750.00 |
| 137 S | RODRIGUEZ | 756 | $890.00 | $950.00 | $890.00 |
| 138 S | LOPEZ, CARLOS | 625 | $910.00 | $850.00 | |
| 140 S | TIE, ERICK | 625 | $780.00 | $850.00 | |
| 142 S | ALBURY, JAMES | 625 | $780.00 | $850.00 | $780.00 |
| 143 S | PIZZALLI, ARTURO | 625 | $730.00 | $850.00 | $730.00 |
| 145 S | MODEL | 756 | | $950.00 | |
| 146 S | CONLI, ELIZABETH | 756 | $890.00 | $950.00 | $890.00 |
| 148 S | SCHOBERG, MARK | 625 | $760.00 | $850.00 | $760.00 |
| 150 S | ARNI, ALEX | 625 | $850.00 | $850.00 | $850.00 |
| 151 S | CHARLES, HERNIET | 625 | $850.00 | $850.00 | $850.00 |
| 153 S | ALLEN, CAROL | 625 | $740.00 | $850.00 | $740.00 |
| 159 S | BLANCO, ANGEL | 625 | $775.00 | $860.00 | $775.00 |
| 160 S | REYES, ISRAEL | 625 | $825.00 | $850.00 | |
| 161 S | PEREZ, MARIA | 625 | $790.00 | $850.00 | $790.00 |
| 162 S | LOVETT, CURTIS | 625 | $730.00 | $850.00 | $730.00 |
| 163 S | THOMPSON, C | 625 | $820.00 | $850.00 | $820.00 |
| 164 S | SMITH, KEIFER | 625 | $850.00 | $850.00 | |
| 155 S | ZADICOFF | 625 | $790.00 | $850.00 | $790.00 |
| 166 S | PERSAUD, RICHARD | 625 | $790.00 | $850.00 | $790.00 |
| 168 S | TEMEME | 625 | $675.00 | $850.00 | $675.00 |
| 169 S | JONE, BARBARA | 625 | $625.00 | $850.00 | $625.00 |
| 171 S | VEGA, ISMAEL | 625 | $750.00 | $850.00 | $750.00 |
| 172 S | ATCHISON, DANIELLE | 625 | $790.00 | $850.00 | $790.00 |
| 173 S | LEWIS, STEVEN | 625 | $760.00 | $850.00 | $760.00 |
| 174 S | TAMAYO, LEO | 625 | $820.00 | $850.00 | |
| 176 S | BELLERMAR, EDNA | 625 | $650.00 | $850.00 | $650.00 |
| 177 S | WELL, CODY | 625 | $700.00 | $850.00 | $700.00 |
| 178 S | RODRIGUEZ, PEDRO | 625 | $790.00 | $850.00 | $790.00 |
| 179 S | STOKLEING, KAREN | 625 | $790.00 | $850.00 | $790.00 |
| 180 S | GRIFFITHS, EULAH | 625 | $770.00 | $850.00 | $770.00 |
| 181 S | BESS RALPH | 925 | $975.00 | $1,100.00 | $975.00 |
| 201 S | HERNANDEZ, MARIA | 625 | $790.00 | $850.00 | $790.00 |
| 202 S | ALVAREZ, NEMESIO | 625 | $790.00 | $850.00 | $790.00 |
| 203 S | DUNNAWAY, TIMOTHY | 625 | $790.00 | $850.00 | $790.00 |
| 204 S | ROLISON, MICHAEL | 625 | $760.00 | $850.00 | $760.00 |
| 205 S | JIMENEZ, ANDY | 625 | $625.00 | $850.00 | |
| 213 S | EDWARD, LEE | 756 | $890.00 | $950.00 | $890.00 |
| 214 S | ZELAYA, JUAN | 756 | $890.00 | $950.00 | $890.00 |
| 215 S | GASSMAN, FIGEN | 756 | $950.00 | $950.00 | $950.00 |

| 219 S | RIOS, ORLANDO | 756 | $890.00 | $950.00 | $890.00 |
|---|---|---|---|---|---|
| 222 S | FORBES, WINSTON | 625 | $750.00 | $850.00 | $750.00 |
| 224 S | KAAMODDEN, NEEZAAMUDI | 625 | $730.00 | $850.00 | $730.00 |
| 225 S | CAZERES, JESUS | 625 | $810.00 | $850.00 | |
| 226 S | BAZAN, LUIS | 625 | $790.00 | $850.00 | $790.00 |
| 227 S | LAMBERT, GREGORY | 625 | $675.00 | $850.00 | $675.00 |
| 231 S | DANIKA, DEE | 756 | $890.00 | $950.00 | $890.00 |
| 236 S | RODRIGUEZ, FELIPE | 625 | $675.00 | $850.00 | $675.00 |
| 240 S | SMITH, TAMEKA | 625 | $750.00 | $850.00 | $750.00 |
| 241 S | IVEY, ALICIA | 625 | $750.00 | $850.00 | $750.00 |
| 242 S | DICARLO, MARIA | 625 | $615.00 | $850.00 | $615.00 |
| 243 S | GALLEGO, ORLANDO | 625 | $850.00 | $850.00 | |
| 244 S | MOSS, CHARLES | 756 | $965.00 | $950.00 | |
| 245 S | SMITH, GREGORY | 756 | $890.00 | $950.00 | $890.00 |
| 248 S | HIGHSMITH, LARRY | 625 | $640.00 | $850.00 | |
| 249 S | ROSE, MURIEL | 625 | $730.00 | $850.00 | $730.00 |
| 250 S | CELLAS, MIGUEL | 625 | $810.00 | $850.00 | |
| 251 S | PATTERSON, TODD | 625 | $790.00 | $850.00 | |
| 252 S | SABINA, EDUARDO | 625 | $790.00 | $850.00 | $790.00 |
| 253 S | FREEMAN, TWILLA | 625 | $730.00 | $850.00 | $730.00 |
| 258 S | BECKLES, JOHN | 304 | $560.00 | $600.00 | $560.00 |
| 259 S | VACANT | 625 | | $850.00 | |
| 261 S | DALEY, DIANNA | 625 | $760.00 | $850.00 | $760.00 |
| 262 S | LONG, BRIAN | 625 | $850.00 | $850.00 | $850.00 |
| 263 S | ROSSILIEN, JUAN | 625 | $820.00 | $850.00 | |
| 265 S | RIVAS, CARLOS | 625 | $770.00 | $850.00 | $760.00 |
| 266 S | CANELA, ROSA | 625 | $675.00 | $850.00 | $675.00 |
| 268 S | NELSON, BRADLEY | 625 | $790.00 | $850.00 | $790.00 |
| 269 S | BECKFORD, CARLA | 625 | $760.00 | $866.00 | $760.00 |
| 271 S | BROOKES, MITCHEL | 625 | $910.00 | $850.00 | |
| 272 S | BEAUZIEX, WANDA | 625 | $775.00 | $850.00 | $775.00 |
| 273 S | PEREZ, EGLY | 625 | $900.00 | $850.00 | |
| 274 S | FARMER, GENE | 625 | $730.00 | $850.00 | $730.00 |
| 275 S | DUNIESKI, LAU | 625 | $775.00 | $850.00 | $775.00 |
| 276 S | FERDER, CARLOS | 625 | $890.00 | $850.00 | |
| 277 S | DER HENST, JOSE | 625 | $675.00 | $850.00 | $675.00 |
| 278 S | RAHMING, VANDA | 625 | $730.00 | $850.00 | $730.00 |
| 279 S | RICHARD, THOMAS | 625 | $790.00 | $850.00 | $790.00 |
| 280 S | PERNETHA, DAVIS | 625 | $790.00 | $850.00 | $790.00 |
| 282 S | HUGHES, BOB | 925 | $950.00 | $1,100.00 | |
| 283 S | PEREZ, DANILO | 925 | $910.00 | $1,100.00 | |
| 284 S | FUENTES, GERALDO | 925 | $900.00 | $1,100.00 | |
| 285 S | GOMEZ, LUIS | 925 | $675.00 | $1,100.00 | |
| 286 S | SALAMISA, EFRAIN | 925 | $880.00 | $1,100.00 | |
| 287 S | FLYNN, PAUL | 925 | $925.00 | $1,100.00 | |
| 288 S | VACANT | 925 | | $1,100.00 | |
| 301 S | ACEVEDO, HERMAN | 625 | $765.00 | $850.00 | $765.00 |
| 302 S | WILLIAMS, FEAH | 625 | $790.00 | $850.00 | $790.00 |
| 304 S | WILLIAMS, RETONYA | 625 | $725.00 | $850.00 | $725.00 |
| 306 S | BROWN, LEONE | 625 | $790.00 | $850.00 | $790.00 |
| 307 S | LIGHTBORN, PAULA | 756 | $890.00 | $960.00 | $890.00 |
| 315 S | SAMUEL, ROSA | 756 | $890.00 | $950.00 | $890.00 |

| 318 S | COAKLEY, NICOLE | 756 | $890.00 | $950.00 | $890.00 |
|---|---|---|---|---|---|
| 319 S | EDWARDS, TONIA | 756 | $890.00 | $950.00 | $890.00 |
| 321 S | ZELEDON, CARMEN | 625 | $770.00 | $850.00 | $770.00 |
| 322 S | OSMAN, MOHAMAD | 625 | $675.00 | $850.00 | $675.00 |
| 323 S | SAMPSON, VICTOR | 625 | $600.00 | $850.00 | |
| 324 S | ROBINSON, SANDRA | 625 | $770.00 | $850.00 | $770.00 |
| 325 S | ENJOLI, PRUDEN | 625 | $750.00 | $850.00 | $750.00 |
| 326 S | KUMOR, BIDDUT | 625 | $790.00 | $850.00 | $790.00 |
| 327 S | WILLIAMS, CARL | 625 | $790.00 | $850.00 | $790.00 |
| 333 S | ELSIE, FAIRCLOUGH | 756 | $890.00 | $950.00 | $890.00 |
| 337 S | RAMONDI, EDWIN | 756 | $900.00 | $950.00 | |
| 338 S | BROWN, EFFIE | 625 | $790.00 | $850.00 | $790.00 |
| 340 S | NOLEN, BASTIAN | 625 | $780.00 | $850.00 | $780.00 |
| 341 S | SUAREZ, SCOTT | 625 | $890.00 | $850.00 | $890.00 |
| 343 S | WILLIAN KIRK | 625 | $880.00 | $850.00 | |
| 347 S | EASON, SHEILA | 756 | $890.00 | $950.00 | $890.00 |
| 348 S | DAVIDSON, MICHEAL | 625 | $790.00 | $850.00 | |
| 349 S | LISETTE, RAMIREZ | 625 | $770.00 | $850.00 | $770.00 |
| 350 S | COOPER, FRANCES | 625 | $790.00 | $850.00 | $790.00 |
| 351 S | LLANOS, CHRISTINA | 625 | $750.00 | $850.00 | $750.00 |
| 352 S | GRETTA, BELLO | 625 | $750.00 | $850.00 | $750.00 |
| 353 S | LEE, LECRETA | 625 | $850.00 | $850.00 | $850.00 |
| 356 S | MONICA, GREEN | 756 | $890.00 | $950.00 | $890.00 |
| 358 S | SELENE, MAYORAL | 304 | $575.00 | $600.00 | $575.00 |
| 359 S | GREER, ANGELA | 625 | $750.00 | $850.00 | $750.00 |
| 360 S | REYES, EDUARDO | 625 | $675.00 | $850.00 | $675.00 |
| 361 S | KAYCE, JONES | 625 | $790.00 | $850.00 | $790.00 |
| 362 S | VACANT | 625 | | $850.00 | |
| 363 S | ARTHUR, STONE | 625 | $750.00 | $850.00 | $750.00 |
| 365 S | ROMAN, ELIZABETH | 625 | $600.00 | $850.00 | |
| 366 S | PABON, RAYMOND | 625 | $700.00 | $850.00 | $700.00 |
| 367 S | BARRET, SUZETTE | 625 | $700.00 | $850.00 | $700.00 |
| 368 S | JOHNSON, SHANTEL | 625 | $750.00 | $850.00 | $750.00 |
| 369 S | LINARES, LEONA | 625 | $750.00 | $850.00 | $750.00 |
| 370 S | HYLTON, PAULETTE | 625 | $735.00 | $850.00 | $735.00 |
| 371 S | CASTRO, DORIAN | 625 | $790.00 | $850.00 | $790.00 |
| 372 S | SOSA, LISANDRA | 625 | $700.00 | $850.00 | $700.00 |
| 373 S | FRANCIS, JAQUELINE | 625 | $790.00 | $850.00 | $790.00 |
| 374 S | WONG, ANGELA | 625 | $820.00 | $850.00 | |
| 375 S | IBRAHIM, KHALIL | 625 | $790.00 | $850.00 | $790.00 |
| 376 S | PAMELA, ASTACIO | 625 | $790.00 | $850.00 | $790.00 |
| 377 S | COBBS, FREDDIE | 625 | $725.00 | $850.00 | $725.00 |
| 378 S | WETHERWAL, DON | 625 | $800.00 | $850.00 | |
| 379 S | SIMPSON, JENNIFER | 625 | $750.00 | $850.00 | $750.00 |
| 380 S | RICO, NOEMI | 625 | $790.00 | $850.00 | $790.00 |
| 402 S | RODRIGUEZ, DAVEL | 625 | $780.00 | $850.00 | $790.00 |
| 403 S | RICHARDSON, CHARLES | 625 | $790.00 | $850.00 | $790.00 |
| 404 S | DIAZ, WILFRDO | 625 | $780.00 | $850.00 | |
| 405 S | BONEPARTE, INGRID | 625 | $850.00 | $850.00 | $850.00 |
| 406 S | BLAIZE, FITZROY | 625 | $790.00 | $850.00 | $790.00 |
| 407 S | HAMMIT, WILLIAM | 756 | $890.00 | $950.00 | $890.00 |
| 408 S | TORRES, WILBERT | 756 | $890.00 | $950.00 | $890.00 |

| | | | | | |
|---|---|---|---|---|---|
| 410 S | CASTRO, ISIDRO | 756 | $890.00 | $950.00 | $890.00 |
| 418 S | BROWN, BEVERLY | 756 | $890.00 | $950.00 | $890.00 |
| 421 S | DOZIER, RAY | 625 | $780.00 | $850.00 | $780.00 |
| 422 S | SEGUNDO, OROBIO | 625 | $750.00 | $850.00 | $750.00 |
| 423 S | SHAHADAD, BHUI | 625 | $790.00 | $850.00 | |
| 424 S | HALE, ANITA | 625 | $760.00 | $850.00 | $760.00 |
| 425 S | SOTO, DORIS | 625 | $750.00 | $850.00 | $750.00 |
| 426 S | DEJESUS, JOSE | 625 | $790.00 | $850.00 | $790.00 |
| 427 S | PALACIO, JESUS | 625 | $790.00 | $880.00 | $790.00 |
| 434 S | LIMA, MELISA | 756 | $890.00 | $950.00 | $890.00 |
| 438 S | MEJIA, AHOBANIA | 625 | $790.00 | $850.00 | $790.00 |
| 439 S | DOOKRAH, HARRIPERSAUD | 625 | $740.00 | $850.00 | $740.00 |
| 440 S | BETANCOURT, DANIEL | 625 | $770.00 | $860.00 | $740.00 |
| 441 S | BUILES, LUIS | 625 | $750.00 | $850.00 | $750.00 |
| 442 S | NATHAN, HRASAR | 625 | $790.00 | $850.00 | $790.00 |
| 443 S | KATIA, JORDAN | 625 | $675.00 | $850.00 | $675.00 |
| 446 S | MELENDEZ, JENNIFER | 756 | $900.00 | $950.00 | |
| 447 S | TAMIKA, NIXON | 756 | $890.00 | $950.00 | $890.00 |
| 448 S | PENA, DARRYL | 625 | $800.00 | $850.00 | |
| 450 S | CLARKE, PHILLIP | 625 | $790.00 | $850.00 | |
| 451 S | GARCIA, RAMON | 625 | $800.00 | $850.00 | |
| 452 S | PARRISH, LETAH | 625 | $790.00 | $850.00 | |
| 453 S | KELLY, MARIA | 625 | $730.00 | $850.00 | $730.00 |
| 455 S | LAWIA, RICHARD | 756 | $870.00 | $950.00 | |
| 457 S | MARRERO, MARILIN | 756 | $890.00 | $950.00 | $890.00 |
| 458 S | FARR, STEPHEN | 304 | $575.00 | $600.00 | $575.00 |
| 459 S | THOMAS, GARY | 625 | $790.00 | $850.00 | $790.00 |
| 460 S | KNOWLES, TROY | 625 | $800.00 | $850.00 | |
| 462 S | KNOWLES, TROY | 625 | $750.00 | $850.00 | |
| 463 S | LOPEZ, JOSE | 625 | $750.00 | $850.00 | $750.00 |
| 465 S | FRILLO, JUAN | 625 | $890.00 | $850.00 | |
| 466 S | MAYOR, TOMAS | 625 | $770.00 | $850.00 | $770.00 |
| 467 S | BING, LOUIE | 625 | $790.00 | $850.00 | $790.00 |
| 468 S | AMADURRI, MICHAEL | 625 | $880.00 | $850.00 | |
| 469 S | BARBOSA, ANGIE | 625 | $790.00 | $850.00 | |
| 470 S | JOSEPH, LIONEL | 625 | $770.00 | $850.00 | $770.00 |
| 471 S | VACANT | 625 | $800.00 | $850.00 | |
| 472 S | MARTINEZ, CLIFFORD | 625 | $770.00 | $850.00 | |
| 473 S | PEREZ, CARLOS | 625 | $800.00 | $850.00 | |
| 474 S | GARCIA, DENISE | 625 | $770.00 | $850.00 | $770.00 |
| 475 S | POLAND, JOHN | 625 | $750.00 | $850.00 | $750.00 |
| 476 S | WHITEHEAD, BRYAN | 625 | $750.00 | $850.00 | $750.00 |
| 477 S | ROBLES, LUIS | 625 | $790.00 | $850.00 | $790.00 |
| 478 S | VALDEZ, LEANDRO | 625 | $750.00 | $850.00 | $750.00 |
| 479 S | WEATHER, WILLIAM | 625 | $700.00 | $850.00 | $700.00 |
| 480 S | DANIEL, ROSADO | 625 | $790.00 | $850.00 | |
| | TOTAL | 130004 | $154,995.00 | $173,600.00 | $114,140.00 |
| | 200 UNITS | | | | |
| | COMMERCIAL STORE | | | | |
| | RENTAL INCOME | | $5,500.00 | $5,500.00 | |
| | TOTAL ACTUAL RENTAL INCOME | | $160,495.00 | $179,100.00 | |



| | | APPRAISED VALUE | |
|---|---|---|---|
| 3 | 504 FT | $99,000.00 | $297,000.00 |
| 157 | 625 FT | $165,000.00 | $25,905,000.00 |
| 32 | 756 FT | $189,000.00 | $6,048,000.00 |
| 8 | 925 FT | $215,000.00 | $1,720,000.00 |
| 200 | | $668,000.00 | $33,970,000.00 |
| | DISCOUNTED SELLOUT VALUE | $28,000,000.00 | |
| | | $33,000,000.00 | |

### 2007
### FIRST CULTER GARDENS, LLC
### FIXED EXPENSES

| | | CURRENT RENT | FUTURE RENT |
|---|---|---|---|
| | | | PROJECTED |
| **RENTAL INCOME** | | $1,925,940.00 | $2,149,200.00 |
| 5 % VACANCY | | $96,297.00 | $107,460.00 |
| **Operating Expense** | | | |
| Association Fees & Bank Fees | | $ 240,000.00 | $ 258,000.00 |
| Office supplies | | $850.00 | $850.00 |
| Professional Fees | | $8,541.00 | $8,541.00 |
| Payroll Services | | $15,151.00 | $15,151.00 |
| Property Taxes | | $238,586.22 | $238,586.22 |
| Total Expense | | $ 502,928.22 | $520,928.22 |
| **CASH FLOW PROFIT** | | $1,326,714.78 | $1,620,811.78 |

# EXHIBIT "B"

---

☺ You forwarded this message on 8/20/2008 10:08 AM.

**Alberto N. Moris**

| From: | Jullo Lago [jullo@pagroup.cc] | | Sent: | Tue 8/12/2008 8:53 PM |
|---|---|---|---|---|
| To: | Alberto N. Moris | | | |
| Cc: | | | | |
| Subject: | FW: TErms | | | |
| Attachments: | | | | |

**From:** Manuel J. Valido [mailto:MValido@sunamericanbank.com]
**Sent:** Friday, June 06, 2008 11:31 AM
**To:** jullo@parealty.cc
**Subject:** TErms

This email will confirm that SAB will provide you with a cap on your loan of 8% and we will match the 4.22% thru September 01, 2008 and then the loan will adjust as per our loan approval....

🏛 SUN AMERICAN BANK

Manuel J. Valido

Senior Vice President

Regional Lending Manager

221 Miracle Mile

Miami Fl. 33134

305-639-7206 - Office

305-448-9308 - Fax

305-321-5436- Cell.

---

*IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only.*
*If you have received this email in error, please notify the system manager or the sender immediately and do not*

*disclose the contents to anyone or make copies thereof.*
**\*\*\* eSafe scanned this email for viruses, vandals, and malicious content. \*\*\***

_____ NOD32 3163 (20080606) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

# EXHIBIT "C"

**Alberto N. Moris**

| | |
|---|---|
| **From:** | Beatriz M. Capote [betty@capotepa.com]                    **Sent:** Fri 7/11/2008 4:11 PM |
| **To:** | Alberto N. Moris |
| **Cc:** | 'DIANA VIDAL (E-mail)'; Dgonzales@SUNAMERICANBANK.COM; Iani@capotepa.com; Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM |
| **Subject:** | RE: South Miami Holdings |
| **Attachments:** | |

Alberto: Please advise your client that the Bank will not close the loan due to, inter alia, (a) your client's failure to disclose to the Bank at the time your client applied for the loan the unrecorded mortgage loan in favor of the entity who conveyed title to your client and the current involvement of such grantor in this project, (b) your client's misrepresentations to the Bank when your client applied for the loan as to the ownership structure of the Borrower, and (c) unacceptable title matters, including, but not limited to, the violation of the unity of title as a result of only submitting to condominium ownership a portion of the entire property subject to the unity of title. Betty

Beatriz M. Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 213
Fax (305) 374-0908

THIS ELECTRONIC MAIL CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEES NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS ELECTRONIC MAIL, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING SAME TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC MAIL IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC MAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THE SAME. THANK YOU.

-----Original Message-----
**From:** Alberto N. Moris [mailto:AMoris@rucciburnham.com]
**Sent:** Friday, July 11, 2008 1:29 PM
**To:** betty@capotepa.com
**Cc:** DIANA VIDAL (E-mail); Dgonzales@SUNAMERICANBANK.COM; Iani@capotepa.com; Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM
**Subject:** RE: South Miami Holdings

Dear Betty;

I have not heard from anyone on this. Just got back from my mini-vacation (wife had a baby) and also don't see any responses to my previous emails. I do know someone was on vacation until recently. Can I get a status/update?

THANXI

Alberto

Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com

Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy this message and notify us immediately by telephone or reply e-mail.

The information set forth in the foregoing message was not intended or written to be used, and cannot be used by any person for the purpose of avoiding federal tax penalties that may be imposed upon the taxpayer. Some of that advice may have been written to support the promotion or marketing or the transactions or matters addressed within the meaning of IRS Circular 230, in which case, be advised that the advice was written to support the promotion or marketing of the transaction(s) or matter(s) addressed, and you should seek advice based on your particular circumstances from an independent tax advisor. Please contact Paul H. Burnham, Esq. at Rucci, Burnham, Carta, Carello & Reilly, LLP if you have any questions.

Neither this message nor the documents attached to this message are encrypted.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**From:** Beatriz M. Capote [mailto:betty@capotepa.com]
**Sent:** Monday, June 30, 2008 2:41 PM
**To:** Alberto N. Moris
**Cc:** 'DIANA VIDAL (E-mail)'; Dgonzales@SUNAMERICANBANK.COM; lani@capotepa.com;
Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM
**Subject:** RE: South Miami Holdings

Thanks, Betty

Beatriz M. Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 213
Fax (305) 374-0908

-----Original Message-----
**From:** Alberto N. Moris [mailto:AMoris@rucciburnham.com]
**Sent:** Monday, June 30, 2008 2:36 PM
**To:** betty@capotepa.com; betty@capotepa.com
**Cc:** DIANA VIDAL (E-mail); Dgonzales@SUNAMERICANBANK.COM; lani@capotepa.com;
Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM
**Subject:** RE: South Miami Holdings

Starting backwards in your email, yes, Phase II CAN be added since South Miami Holdings simply
became a "Subsequent Developer" under Chapter 718, Florida Statutes. There is nothing that would
impede South Miami Holdings from concerting Phase II. Nonetheless, the point is moot since First
Cutler Gardens would be getting back all the units anyway.

Since this is the second refinancing of Phase I and Phase II was re-financed separately (shortly
thereafter), this has never been an issue. I will discuss with Fidelity and get back to you.

Thanks,

Alberto

Alberto N. Moris, Esq.
Rucci, Burnham, Carta, Carello & Reilly, LLP
30 Old Kings Highway South
Darien, CT 06820
Tel: 203-899-3333
Fax: 203-655-4302
E-mail: amoris@rucciburnham.com

-----Original Message-----
From: Beatriz M. Capote [mailto:betty@capotepa.com]
Sent: Mon 6/30/2008 1:14 PM
To: Alberto N. Moris; betty@capotepa.com

Cc: 'DIANA VIDAL (E-mail)'; Dgonzales@SUNAMERICANBANK.COM; lani@capotepa.com; Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM
Subject: RE: South Miami Holdings

Alberto: Here is one possible scenario. The Bank mortgages the units now and then has to foreclose within the next 30 months, and now the Bank owns the units and has to sell them to a third party with the potential of Phase II never to be added (and I think we all agree that not adding Phase II would violate the Unity of Title) and this prospective buyer has no control over whether Phase II ever gets added or not, and thus why would this prospective buyer want to purchase these units with such a potential title problem. Bottom line, if the Bank forecloses, who will buy these units from the Bank with this problem? Again, you seem to assume that it is a given fact that Phase II will be added, but that is not the case, First Cutler has a right and not a duty at this time to add Phase II. Not to complicate matters, but in my opinion Phase II cannot even be added at this time by First Cutler as First Cutler already sold all of the units in the condominium and thus it is no longer the developer of the condominium project. Betty

Beatriz M. Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 213
Fax (305) 374-0908

-----Original Message-----
From: Alberto N. Moris [mailto:AMoris@rucciburnham.com]
Sent: Monday, June 30, 2008 12:28 PM
To: betty@capotepa.com
Cc: DIANA VIDAL (E-mail); Dgonzales@SUNAMERICANBANK.COM; lani@capotepa.com; Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM
Subject: RE: South Miami Holdings

I am a bit confused. Isn't this loan only for 30 months? We are allowed seven (7) years from the date the Declaration of Condominium was filed (which was some time in 2006) to convert Phase II. Please clarify. Thanks.

Alberto N. Moris, Esq.
Rucci, Burnham, Carta, Carello & Reilly, LLP
30 Old Kings Highway South
Darien, CT 06820
Tel: 203-899-3333
Fax: 203-655-4302
E-mail: amoris@rucciburnham.com

-----Original Message-----
From: Beatriz M. Capote [mailto:betty@capotepa.com]
Sent: Mon 6/30/2008 11:03 AM
To: Alberto N. Moris
Cc: 'DIANA VIDAL (E-mail)'; Dgonzales@SUNAMERICANBANK.COM; lani@capotepa.com; Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM

Subject: RE: South Miami Holdings

Robert:   The following is my response to your comments below:

As to item #10, the unity of title, your argument assumes that Phase II will be added to the condominium project, but what if it does not get added to the condominium project, then you would end up with two separately owned projects, one a condominium project and the other a non-condominium rental project owned by someone else.  I have discussed this matter with a title insurance attorney at First American Title Insurance Company who agrees this could be a real problem. Keep in mind that the developer reserved the right to add Phase II, but did not commit to add Phase II.  Having said that, if the Director of Miami-Dade County Building and Zoning Department agrees in writing with your position that even in Phase II is never added the Unity of Title is not violated, then we will accept that.

As to the Great Florida mortgage staying in place as to 15 units, I will convey that information to the Bank.

As to item # 14, all leases must be subordinate to the lien of the mortgage. I have not yet seen any of the leases, but I assume like all leases they have wording to that effect and thus you should be able to insure over the priority of the mortgage over all the leases.

Betty

Beatriz M. Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 213
Fax (305) 374-0908
-----Original Message-----
From: Alberto N. Moris [mailto:AMoris@rucciburnham.com]
Sent: Friday, June 27, 2008 1:51 PM
To: lani@capotepa.com; emiranda@patitle.cc
Cc: DIANA VIDAL (E-mail); Dgonzales@SUNAMERICANBANK.COM;
betty@capotepa.com
Subject: RE: South Miami Holdings


Dear Lani:



I am responding to the questions posed to Elena to clarify the issues raised in your email:



Item #10 cannot be released.  There is no conflict since the Unity of Title SPECIFICALLY has a condominium exception.  I think the confusion arises because since it is a PHASE Condominium, only Phase I has been converted to individual condominium units at this time.  However, both phases (Phase I and Phase II) are ONE condominium under the Declaration of

Condominium for Cutler Gardens, A Condominium filed, it is simply that we have seven (7) years to convert the units in Phase II as contemplated in the Declaration of Condominium and permitted under Chapter 718, Florida Statutes (The Condominium Act).

The Great Florida Bank mortgage is only being partially released since they will retain a mortgage on 15 units not covered by your client's mortgage (which is for 200 other units). The language you might be referring to is because since their original mortgage encumbered ALL of the units in Phase I they probably used language encumbering all of the common elements thereto. Accordingly, we just need to make sure that they unencumber that in their partial release and only maintain an interest in the common elements corresponding to their 15 units. This seems a bit complicated but we are doing this instead of releasing all the units entirely and then re-mortgaging the 15 units as a brand new mortgage for tax reasons.

Item #14- I am a bit confused. Fidelity will not delete this (a standard exception on all title insurance policies) unless I can prove that the units are not rented which of course I cannot do since that would be a false representation. Indeed, the loan is premised on them being so rented. Hence, I don't understand your request. Please explain.

Finally, I thought this was supposed to close Monday. Is that still the case? Please let me know.

Thank you,

Alberto

Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com

Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm

*****************************************************************
This message is intended only for the use of the individual or entity to
which it is addressed, and may contain information that is privileged,
confidential and exempt from disclosure under applicable law.  If the reader
of this message is not the intended recipient, or the employee or agent
responsible for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited.  If you have received this
communication in error, please destroy this message and notify us
immediately by telephone or reply e-mail.


    The information set forth in the foregoing message was not intended or
written to be used, and cannot be used by any person for the purpose of
avoiding federal tax penalties that may be imposed upon the taxpayer.  Some
of that advice may have been written to support the promotion or marketing
or the transactions or matters addressed within the meaning of IRS Circular
230, in which case, be advised that the advice was written to support the
promotion or marketing of the transaction(s) or matter(s) addressed, and you
should seek advice based on your particular circumstances from an
independent tax advisor.  Please contact Paul H. Burnham, Esq. at Rucci,
Burnham, Carta, Carello & Reilly, LLP if you have any questions.


    Neither this message nor the documents attached to this message are
encrypted.

*****************************************************************


-------------------------------------------------------------
--

From: Lani Capote [mailto:lani@capotepa.com]
Sent: Wednesday, June 25, 2008 4:02 PM
To: emiranda@patitle.cc
Cc: DIANA VIDAL (E-mail); Dgonzales@SUNAMERICANBANK.COM;
betty@capotepa.com; Alberto N. Moris
Subject: South Miami Holdings


Hi Elena,

I reviewed the hard copies of the title exceptions you sent me and I have a problem with item 10 in Schedule B-II, the Unity of Title, as it makes Phase I and Phase II one undivided parcel, however, only Phase I was converted to condominium ownership while Phase II remains a separate parcel owned by First Cutler, thus the only way to correct this title defect is to have the Unity of Title released. Also, as to item 11 in Schedule B-II, it expired in 2001. Accordingly, we will need this exception to be deleted.

Also, why is Great Florida Bank not being paid off? What are they retaining a mortgage on? Their mortgage not only encumbers the units but also the Borrower's interest in the common elements of the condominium, which is a problem for us.

Lastly, you did not mention in your email that you were going to delete item 14 in Schedule B-II at closing. Please confirm.

Lani.

Lani Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 212
Fax (305) 374-0908

THIS ELECTRONIC MAIL CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEES NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS ELECTRONIC MAIL, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING SAME TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC MAIL IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC MAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THE SAME. THANK YOU.

No virus found in this outgoing message.
Checked by AVG.
Version: 7.5.524 / Virus Database: 270.4.1/1516 - Release Date: 6/24/2008
7:53 AM

# EXHIBIT "D"

🔄 You forwarded this message on 8/12/2008 1:18 PM.

**Alberto N. Moris**

| From: | Alberto N. Moris | | Sent: Wed 7/16/2008 12:41 PM |
|-------|------------------|--|------------------------------|
| To: | 'betty@capotepa.com' | | |
| Cc: | 'DIANA VIDAL (E-mail)'; 'Dgonzales@SUNAMERICANBANK.COM'; lanl@capotepa.com; Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM | | |
| Subject: | FW: Sun American Bank loan to South Miami Holdings, LLC | | |
| Attachments: | | | |

Dear Betty:

This is the letter Julio Lago wrote to Manny Valido which has not yet received a response. Our client was hoping to resolve this matter without our intervention, but I am forwarding it to you so now that you are apprised of everything. Although I think Mr. Lago's response speaks for itself, I would like to amplify:

There has NEVER been ANY misrepresentations or non-disclosures in our client's application. The mortgagee was disclosed repeatedly to Manny Valido and other Bank official. Moreover, the mortgage was in the HUD statement provided to the bank as part of the application. There is no way the Bank would have approved this loan without such HUD Statement. Furthermore, we also provided the Operating Agreements to both companies. As evidence of that is the fact that the guarantors were obtained from the members of the Operating Agreement of the mortgagee. Indeed, Julio Lago, to whom the Loan Commitment Letter was directed, is the Manager of the mortgagee and not the owner of the properties. Finally, we even specifically requested that the mortgage be cancelled by simply deeding back the property in a Deed in Lieu of Foreclosure PRIOR to the loan closing to streamline the ownership structure. Consequently, these allegations are simply absurd.

The only matter we had been waiting to hear from you on which we understood was delayed because you were on vacation was the issue of the Unity of Title raised by you which I addressed in detail in a previous email to you. In summary, the Unity of Title indeed may impair the title of the adjoining parcel of property (which is not a part of this loan) should it not be converted to condominium within the designated (7) years but does not in any way effect the title of the condominium units which are being mortgaged herein. The creation of the condominium was specifically permitted under the Unity of Title and thus there is no cloud, issue of marketability or issue of title with any of the units as a result of such Unity of Title.

We await the Bank's response to both our client's correspondence and this one.

Your prompt attention to this matter is greatly appreciated.

Thank you,

Alberto


Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com


Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm


*****************************************************************

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy this message and notify us immediately by telephone or reply e-mail.


The information set forth in the foregoing message was not intended or written to be used, and cannot be used by any person for the purpose of avoiding federal tax penalties that may be imposed upon the taxpayer. Some of that advice may have been written to support the promotion or marketing or the transactions or matters addressed within the meaning of IRS Circular 230, in which case, be advised that the advice was written to support the promotion or marketing of the transaction(s) or matter(s) addressed, and you should seek advice based on your particular circumstances from an independent tax advisor. Please contact Paul H. Burnham, Esq. at Rucci, Burnham, Carta, Carello & Reilly, LLP if you have any questions.


Neither this message nor the documents attached to this message are encrypted.

*****************************************************************

**From:** Anais Lago [mailto:alago@patitle.cc]
**Sent:** Monday, July 14, 2008 4:56 PM
**To:** Alberto N. Moris
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Here you go

Thank you,

Anays Lago

Preferred Alliance Title Services Inc.

10820 SW 200 Drive

Miami, FL 33157

(305) 480-5737 office

(305) 480-4123 fax

*LEGAL DISCLAIMER:*

*The information transmitted is intended solely for the individual to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you have received this email in error please contact the sender and delete the material from any computer.*

**From:** Julio Lago [mailto:julio@parealty.cc]
**Sent:** Monday, July 14, 2008 4:53 PM
**To:** alago@patitle.cc
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

**From:** Julio Lago [mailto:julio@parealty.cc]
**Sent:** Monday, July 14, 2008 1:40 PM
**To:** 'Manuel J. Valido'
**Cc:** 'Mike Flynn'
**Subject:** RE: Sun American Bank loan to South Miami Holdings, LLC

Manny,

Good afternoon, I left you a message on Friday and I have not received a response as of yet. It was my understanding that we were waiting for two things to conclude the closing: (1) was a title issue to be resolved by both attorneys and (2) your attorney coming back from vacation last Thursday or Friday. On Friday evening I received an email (a copy is attached for your records) from my attorney advising that the closing was canceled due to Sun American Bank not receiving complete and accurate information. I found this kind of odd and totally incorrect. Since the first day we sat down, I personally explained the sale from First Cutler Gardens to South Miami Holdings on the 215 units. I also provided you with a copy of the HUD1 of the sale showing the second mortgage on the property. I also provided you the operating agreement of both entities explaining that the partners of First Cutler Gardens, LLC will personally guarantee the loan for South Miami Holdings, LLC. In reference to the unity of title, I think that was resolved according to my attorney.

Awaiting your response.

Julio

**From:** Manuel J. Valido [mailto:MValido@sunamericanbank.com]
**Sent:** Thursday, June 19, 2008 8:12 AM
**To:** julio@parealty.cc
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Please see below the email from my attorney dated 04/18/08 and since then your attorney totally ignored it....

 SUN AMERICAN BANK

Manuel J. Valido

Senior Vice President

Regional Lending Manager

221 Miracle Mile

Miami Fl. 33134

305-639-7206 - Office

305-448-9308 - Fax

305-321-5436- Cell.

---

**From:** Beatriz M. Capote [mailto:betty@capotepa.com]
**Sent:** Wednesday, June 18, 2008 5:29 PM
**To:** 'Alberto N. Moris'
**Subject:** RE: Sun American Bank loan to South Miami Holdings, LLC

Alberto: We have never received anything from you or from the Borrower on this file. Please tell us the method you or the Borrower used to send all of these requirements to us so that we can figure out what happened to them or who has them. Thanks, Betty

Beatriz M. Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 213
Fax (305) 374-0908

    -----Original Message-----
    **From:** Alberto N. Moris [mailto:AMoris@rucciburnham.com]
    **Sent:** Wednesday, June 18, 2008 4:54 PM
    **To:** lani@capotepa.com
    **Cc:** betty@capotepa.com
    **Subject:** RE: Sun American Bank loan to South Miami Holdings, LLC

I am sorry. This completely refreshes my recollection. All of the requirements requested on April 5th were forwarded to your office quite some time ago back in April. The telephone call you received on Monday was Yamilet Miranda who wanted to know what else we needed to provided you since we had not heard anything from you and the Sun American rep (Manny Valido) had told us this needed to close by the end of the month. Accordingly, please advise if you need anything else from us.

Your attention to this matter is greatly appreciated.  Thank you.

Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com

Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm

**From:** Lani Capote [mailto:lani@capotepa.com]
**Sent:** Wednesday, June 18, 2008 4:19 PM
**To:** Alberto N. Moris
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Alberto:  Here it is. Betty

Lani Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 212
Fax (305) 374-0908

THIS

-----Original Message-----
**From:** Lani Capote [mailto:lani@capotepa.com]

**Sent:** Friday, April 04, 2008 2:05 PM
**To:** 'amoris@rucciburnham.com'
**Cc:** 'betty@capotepa.com'
**Subject:** Sun American Bank loan to South Miami Holdings, LLC

Alberto,

I represent Sun American Bank in connection with the above referenced loan. I have been advised that you will be representing the Borrower. Enclosed is our Checklist of Requirements.

The mortgagee clause for the title insurance commitment is "Sun American Bank, a Florida banking corporation, ISAOA, ATIMA."

The mortgagee clause for the insurance and CPL is "Sun American Bank, 7300 Corporate Center Drive, Suite 102, Miami, Florida 33126."

I look forward to working with you on this transaction.

Lani.

Lani Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 212
Fax (305) 374-0908

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only.
If you have received this email in error, please notify the system manager or the sender immediately and do not disclose the contents to anyone or make copies thereof.
*** eSafe scanned this email for viruses, vandals, and malicious content. ***

_____ NOD32 3200 (20080619) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

_____ NOD32 3266 (20080714) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

# EXHIBIT "E"
# (composite)

**Alberto N. Moris**

| | | | |
|---|---|---|---|
| **From:** | Beatriz M. Capote [betty@capotepa.com] | **Sent:** | Thu 8/14/2008 11:34 AM |
| **To:** | Alberto N. Moris | | |
| **Cc:** | | | |
| **Subject:** | RE: Sun American Bank loan to South Miami Holdings, LLC | | |
| **Attachments:** | | | |

Alberto:  Call me. Betty


Beatriz M. Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 213
Fax (305) 374-0908

-----Original Message-----
**From:** Alberto N. Moris [mailto:AMoris@rucciburnham.com]
**Sent:** Tuesday, August 12, 2008 1:42 PM
**To:** betty@capotepa.com
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Dear Betty:


We have yet to receive any response from anyone on this matter (including the attached correspondence sent to you on July 16, 2008), and now the time to close has become critical to our client. As you are aware, the current mortgage on our client's property comes due shortly and was the "rasion d'etre" for our client's refinancing. Consequently, we cannot wait any longer for your client and will need to receive a closing date for this loan immediately.


Please be advised that should we not receive a difinitive date for the closing of the subject loan within five (5) days from your receipt of this letter, we will have no choice but to pursue whatever legal action necessary to enforce the terms of the Committment Letter (and the subsequesnt amendments thereto). Our client has paid your client all funds pursuant to such Committment Letter and has complied with all of the requirements therein (as amended), and is thus ready and able to close on this loan pursuant to such Committment Letter.


Please be advised that this letter in no way waives any other remedies available to our client in this matter. In addition, this letter does not waive any rights we have against any parties who have improperly interefered in this matter or have violated either a fiduciary duty or their duty of ordinary care to our client. This also includes any claims against any party making any material misrepresentations to our client that were reasonably and detrimentally relied upon by our client.


PLEASE GOVERN YOURSELVES ACCORDINGLY.

Sincerely,


Alberto N. Moris

---

Dear Betty:


This is the letter Julio Lago wrote to Manny Valido which has not yet received a response. Our client was hoping to resolve this matter without our intervention, but I am forwarding it to you so now that you are apprised of everything. Although I think Mr. Lago's response speaks for itself, I would like to amplify:


There has NEVER been ANY misrepresentations or non-disclosures in our client's application. The mortgagee was disclosed repeatedly to Manny Valido and other Bank official. Moreover, the mortgage was in the HUD statement provided to the bank as part of the application. There is no way the Bank would have approved this loan without such HUD Statement. Furthermore, we also provided the Operating Agreements to both companies. As evidence of that is the fact that the guarantors were obtained from the members of the Operating Agreement of the mortgagee. Indeed, Julio Lago, to whom the Loan Commitment Letter was directed, is the Manager of the mortgagee and not the owner of the properties. Finally, we even specifically requested that the mortgage be cancelled by simply deeding back the property in a Deed in Lieu of Foreclosure PRIOR to the loan closing to streamline the ownership structure. Consequently, these allegations are simply absurd.


The only matter we had been waiting to hear from you on which we understood was delayed because you were on vacation was the issue of the Unity of Title raised by you which I addressed in detail in a previous email to you. In summary, the Unity of Title indeed may impair the title of the adjoining parcel of property (which is not a part of this loan) should it not be converted to condominium within the designated (7) years but does not in any way effect the title of the condominium units which are being mortgaged herein. The creation of the condominium was specifically permitted under the Unity of Title and thus there is no cloud, issue of marketability or issue of title with any of the units as a result of such Unity of Title.


We await the Bank's response to both our client's correspondence and this one.


Your prompt attention to this matter is greatly appreciated.

Thank you,


Alberto


Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com


Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy this message and notify us immediately by telephone or reply e-mail.


The information set forth in the foregoing message was not intended or written to be used, and cannot be used by any person for the purpose of avoiding federal tax penalties that may be imposed upon the taxpayer. Some of that advice may have been written to support the promotion or marketing or the transactions or matters addressed within the meaning of IRS Circular 230, in which case, be advised that the advice was written to support the promotion or marketing of the transaction(s) or matter(s) addressed, and you should seek advice based on your particular circumstances from an independent tax advisor. Please contact Paul H. Burnham, Esq. at Rucci, Burnham, Carta, Carello & Reilly, LLP if you have any questions.


Neither this message nor the documents attached to this message are encrypted.

*****************************************************************

---

**From:** Anais Lago [mailto:alago@patitle.cc]
**Sent:** Monday, July 14, 2008 4:56 PM
**To:** Alberto N. Moris
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Here you go

Thank you,

Anays Lago

Preferred Alliance Title Services Inc.

10820 SW 200 Drive

Miami, FL  33157

(305) 480-5737 office

(305) 480-4123 fax

*LEGAL DISCLAIMER:*

*The information transmitted is intended solely for the individual to whom it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of or taking action in reliance upon this information by persons or entities other than the intended recipient is prohibited.  If you have received this email in error please contact the sender and delete the material from any computer.*

---

**From:** Julio Lago [mailto:julio@parealty.cc]
**Sent:** Monday, July 14, 2008 4:53 PM
**To:** alago@patitle.cc
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

**From:** Julio Lago [mailto:julio@parealty.cc]
**Sent:** Monday, July 14, 2008 1:40 PM
**To:** 'Manuel J. Valido'
**Cc:** 'Mike Flynn'
**Subject:** RE: Sun American Bank loan to South Miami Holdings, LLC

Manny,

Good afternoon, I left you a message on Friday and I have not received a response as of yet. It was my understanding that we were waiting for two things to conclude the closing: (1) was a title issue to be resolved by both attorneys and (2) your attorney coming back from vacation last Thursday or Friday. On Friday evening I received an email (a copy is attached for your records) from my attorney advising that the closing was canceled due to Sun American Bank not receiving complete and accurate information. I found this kind of odd and totally incorrect. Since the first day we sat down, I personally explained the sale from First Cutler Gardens to South Miami Holdings on the 215 units. I also provided you with a copy of the HUD1 of the sale showing the second mortgage on the property. I also provided you the operating agreement of both entities explaining that the partners of First Cutler Gardens, LLC will personally guarantee the loan for South Miami Holdings, LLC. In reference to the unity of title, I think that was resolved according to my attorney.

Awaiting your response.

Julio

**From:** Manuel J. Valido [mailto:MValido@sunamericanbank.com]
**Sent:** Thursday, June 19, 2008 8:12 AM
**To:** julio@parealty.cc
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Please see below the email from my attorney dated 04/18/08 and since then your attorney totally ignored it....

Manuel J. Valido

Senior Vice President

Regional Lending Manager

221 Miracle Mile

Miami Fl. 33134

305-639-7206 – Office

305-448-9308 – Fax

305-321-5436– Cell.

---

**From:** Beatriz M. Capote [mailto:betty@capotepa.com]
**Sent:** Wednesday, June 18, 2008 5:29 PM
**To:** 'Alberto N. Moris'
**Subject:** RE: Sun American Bank loan to South Miami Holdings, LLC

Alberto: We have never received anything from you or from the Borrower on this file. Please tell us the method you or the Borrower used to send all of these requirements to us so that we can figure out what happened to them or who has them. Thanks, Betty

Beatriz M. Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 213
Fax (305) 374-0908

-----Original Message-----
**From:** Alberto N. Moris [mailto:AMoris@rucciburnham.com]
**Sent:** Wednesday, June 18, 2008 4:54 PM
**To:** lani@capotepa.com
**Cc:** betty@capotepa.com
**Subject:** RE: Sun American Bank loan to South Miami Holdings, LLC

I am sorry. This completely refreshes my recollection. All of the requirements requested on April 5th were forwarded to your office quite some time ago back in April. The telephone call you received on Monday was Yamilet Miranda who wanted to know what else we needed to provided

you since we had not heard anything from you and the Sun American rep (Manny Valido) had told us this needed to close by the end of the month. Accordingly, please advise if you need anything else from us.

Your attention to this matter is greatly appreciated. Thank you.

Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com

Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm

---

**From:** Lani Capote [mailto:lani@capotepa.com]
**Sent:** Wednesday, June 18, 2008 4:19 PM
**To:** Alberto N. Moris
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Alberto:  Here it is. Betty

Lani Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 212
Fax (305) 374-0908

THIS

-----Original Message-----
**From:** Lani Capote [mailto:lani@capotepa.com]
**Sent:** Friday, April 04, 2008 2:05 PM
**To:** 'amoris@rucciburnham.com'
**Cc:** 'betty@capotepa.com'
**Subject:** Sun American Bank loan to South Miami Holdings, LLC

Alberto,

I represent Sun American Bank in connection with the above referenced loan. I have been advised that you will be representing the Borrower. Enclosed is our Checklist of Requirements.

The mortgagee clause for the title insurance commitment is "Sun American Bank, a Florida banking corporation, ISAOA, ATIMA."

The mortgagee clause for the insurance and CPL is "Sun American Bank, 7300 Corporate Center Drive, Suite 102, Miami, Florida 33126."

I look forward to working with you on this transaction.

Lani.

Lani Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 212
Fax (305) 374-0908

---

*IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only.*
*If you have received this email in error, please notify the system manager or the sender immediately and do not disclose the contents to anyone or make copies thereof.*
*** eSafe scanned this email for viruses, vandals, and malicious content. ***

---

_____ NOD32 3200 (20080619) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

_____ NOD32 3266 (20080714) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

ℹ️ You forwarded this message on 8/12/2008 5:14 PM.

**Alberto N. Moris**

| From: | Beatriz M. Capote [betty@capotepa.com] | Sent: Tue 8/12/2008 5:10 PM |
|---|---|---|
| To: | Alberto N. Moris | |
| Cc: | Rgarrett@SUNAMERICANBANK.COM; MValido@SUNAMERICANBANK.COM | |
| Subject: | RE: Sun American Bank loan to South Miami Holdings, LLC | |
| Attachments: | | |

Alberto:

Your e-mail came as a surprise as your client was told back in mid July by the Bank that the Bank will not close this loan for the reasons stated in my e-mail to you of July 11, 2008.

I advised you via e-mail on July 11, 2008, that the Bank will not close the loan due to, inter alia, (a) your client's failure to disclose to the Bank at the time your client applied for the loan the unrecorded mortgage loan in favor of the entity who conveyed title to your client and the current involvement of such grantor in this project, (b) your client's misrepresentations to the Bank when your client applied for the loan as to the ownership structure of the Borrower, and (c) unacceptable title matters, including, but not limited to, the violation of the unity of title as a result of only submitting to condominium ownership a portion of the entire property subject to the unity of title which constitutes a title defect totally unacceptable to the Bank.

Betty

Beatriz M. Capote, Esq.
Capote & Capote, P.A.
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Office (305) 374-1555 Ext. 213
Fax (305) 374-0908

THIS ELECTRONIC MAIL CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEES NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS ELECTRONIC MAIL, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING SAME TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC MAIL IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC MAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THE SAME. THANK YOU.

-----Original Message-----
**From:** Alberto N. Moris [mailto:AMoris@rucciburnham.com]
**Sent:** Tuesday, August 12, 2008 1:42 PM
**To:** betty@capotepa.com
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Dear Betty:

We have yet to receive any response from anyone on this matter (including the attached correspondence sent to you on July 16, 2008), and now the time to close has become critical to our client. As you are aware, the current mortgage on our client's property comes due shortly and was the "rasion d'etre" for our client's refinancing. Consequently, we cannot wait any longer for your client and will need to receive a closing date for this loan immediately.

Please be advised that should we not receive a difinitive date for the closing of the subject loan within five (5) days from your receipt of this letter, we will have no choice but to pursue whatever legal action necessary to enforce the terms of the Committment Letter (and the subsequesnt amendments thereto). Our client has paid your client all funds pursuant to such Committment Letter and has complied with all of the requirements therein (as amended), and is thus ready and able to close on this loan pursuant to such Committment Letter.

Please be advised that this letter in no way waives any other remedies available to our client in this matter. In addition, this letter does not waive any rights we have against any parties who have improperly interefered in this matter or have violated either a fiduciary duty or their duty of ordinary care to our client. This also includes any claims against any party making any material misrepresentations to our client that were reasonably and detrimentally relied upon by our client.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Sincerely,

Alberto N. Moris

Dear Betty:

This is the letter Julio Lago wrote to Manny Valido which has not yet received a response. Our client was hoping to resolve this matter without our intervention, but I am forwarding it to you so now that you are apprised of everything. Although I think Mr. Lago's response speaks for itself, I would like to amplify:

There has NEVER been ANY misrepresentations or non-disclosures in our client's application. The mortgagee was disclosed repeatedly to Manny Valido and other Bank official. Moreover, the mortgage was in the HUD statement provided to the bank as part of the application. There is no way the Bank would have approved this loan without such HUD Statement. Furthermore, we also provided the Operating Agreements to both companies. As evidence of that is the fact that the guarantors were obtained from the members of the Operating Agreement of the mortgagee. Indeed, Julio Lago, to whom the Loan Commitment Letter was directed, is the Manager of the mortgagee and not the owner of the properties. Finally, we even specifically requested that the mortgage be cancelled by simply deeding back the property in a Deed in Lieu of Foreclosure PRIOR to the loan closing to streamline the ownership structure. Consequently, these allegations are simply absurd.

The only matter we had been waiting to hear from you on which we understood was delayed because you were on vacation was the issue of the Unity of Title raised by you which I addressed in detail in a previous email to you. In summary, the Unity of Title indeed may impair the title of the adjoining parcel of property (which is not a part of this loan) should it not be converted to condominium within the designated (7) years but does not in any way effect the title of the condominium units which are being mortgaged herein. The creation of the condominium was specifically permitted under the Unity of Title and thus there is no cloud, issue of marketability or issue of title with any of the units as a result of such Unity of Title.


We await the Bank's response to both our client's correspondence and this one.


Your prompt attention to this matter is greatly appreciated.


Thank you,


Alberto


Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com


Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy this message and notify us immediately by telephone or reply e-mail.

The information set forth in the foregoing message was not intended or written to be used, and cannot be used by any person for the purpose of avoiding federal tax penalties that may be imposed upon the taxpayer. Some of that advice may have been written to support the promotion or marketing or the transactions or matters addressed within the meaning of IRS Circular 230, in which case, be advised that the advice was written to support the promotion or marketing of the transaction(s) or matter(s) addressed, and you should seek advice based on your particular circumstances from an independent tax advisor. Please contact Paul H. Burnham, Esq. at Rucci, Burnham, Carta, Carello & Reilly, LLP if you have any questions.

Neither this message nor the documents attached to this message are encrypted.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**From:** Anais Lago [mailto:alago@patitle.cc]
**Sent:** Monday, July 14, 2008 4:56 PM
**To:** Alberto N. Moris
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

Here you go

Thank you,

Anays Lago

Preferred Alliance Title Services Inc.

10820 SW 200 Drive

Miami, FL  33157

(305) 480-5737 office

(305) 480-4123 fax

*LEGAL DISCLAIMER:*

*The information transmitted is intended solely for the individual to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you have received this email in error please contact the sender and delete the material from any computer.*

**From:** Julio Lago [mailto:julio@parealty.cc]
**Sent:** Monday, July 14, 2008 4:53 PM
**To:** alago@patitle.cc
**Subject:** FW: Sun American Bank loan to South Miami Holdings, LLC

**From:** Julio Lago [mailto:julio@parealty.cc]
**Sent:** Monday, July 14, 2008 1:40 PM
**To:** 'Manuel J. Valido'
**Cc:** 'Mike Flynn'
**Subject:** RE: Sun American Bank loan to South Miami Holdings, LLC

Manny,

Good afternoon, I left you a message on Friday and I have not received a response as of yet. It was my understanding that we were waiting for two things to conclude the closing: (1) was a title issue to be resolved by both attorneys and (2) your attorney coming back from vacation last Thursday or Friday. On Friday evening I received an email (a copy is attached for your records) from my attorney advising that the closing was canceled due to Sun American Bank not receiving complete and accurate information. I found this kind of odd and totally incorrect. Since the first day we sat down, I personally explained the sale from First Cutler Gardens to South Miami Holdings on the 215 units. I also provided you with a copy of the HUD1 of the sale showing the second mortgage on the property. I also provided you the operating agreement of both entities explaining that the partners of First Cutler Gardens, LLC will personally guarantee the loan for South Miami Holdings, LLC. In reference to the unity of title, I think that was resolved according to my attorney.

Awaiting your response.


Julio

# EXHIBIT "F"

**Alberto N. Moris**

| | | | |
|---|---|---|---|
| **From:** | Alberto N. Moris | **Sent:** | Wed 8/27/2008 12:46 PM |
| **To:** | 'betty@capotepa.com' | | |
| **Cc:** | | | |
| **Subject:** | FW: Cutler Gardens, A Condominium | | |
| **Attachments:** | | | |

Dear Betty:

Pursuant to you request, we contacted the County to obtain their position on this matter and attached is their response.  We believe this finally puts this matter to rest.

Although we have vehemently disagreed with your assertion that the Unity of Title creates a cloud on the title to the referenced condominium units, a claim on your firm's part which quite frankly is tantamount to a Slander of Title, we agreed to obtain this so as to eliminate any possible doubts raised by these claims which we assert have been made in bad faith.  We have jumped this final hoop and are ready to close.   Consequently, please provide us with a date of the closing of this deal so that we may proceed accordingly.

Please be advised that failure to close this deal will force our client to seek legal action to enforce its rights under the Loan Commitment Letter (and all amendments thereto) and pursue all actual and consequential damages as a result of your client's breach of such agreement.  In this regard, please note that this correspondence does not waive any rights or remedies our clients may have against your client in case of such breach and any right and remedies against any other parties involved in this matter.

Your prompt attention to this matter is greatly appreciated.  Thank you.

Sincerely,

Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

**Alberto N. Moris**

| From: | Alberto N. Moris | | Sent: Wed 8/27/2008 12:46 PM |
|---|---|---|---|
| To: | 'betty@capotepa.com' | | |
| Cc: | | | |
| Subject: | FW: Cutler Gardens, A Condominium | | |
| Attachments: | | | |

Dear Betty:

Pursuant to you request, we contacted the County to obtain their position on this matter and attached is their response. We believe this finally puts this matter to rest.

Although we have vehemently disagreed with your assertion that the Unity of Title creates a cloud on the title to the referenced condominium units, a claim on your firm's part which quite frankly is tantamount to a Slander of Title, we agreed to obtain this so as to eliminate any possible doubts raised by these claims which we assert have been made in bad faith. We have jumped this final hoop and are ready to close. Consequently, please provide us with a date of the closing of this deal so that we may proceed accordingly.

Please be advised that failure to close this deal will force our client to seek legal action to enforce its rights under the Loan Commitment Letter (and all amendments thereto) and pursue all actual and consequential damages as a result of your client's breach of such agreement. In this regard, please note that this correspondence does not waive any rights or remedies our clients may have against your client in case of such breach and any right and remedies against any other parties involved in this matter.

Your prompt attention to this matter is greatly appreciated. Thank you.

Sincerely,

Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com

Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm

**********************************************************************

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy this message and notify us immediately by telephone or reply e-mail.

The information set forth in the foregoing message was not intended or written to be used, and cannot be used by any person for the purpose of avoiding federal tax penalties that may be imposed upon the taxpayer. Some of that advice may have been written to support the promotion or marketing or the transactions or matters addressed within the meaning of IRS Circular 230, in which case, be advised that the advice was written to support the promotion or marketing of the transaction(s) or matter(s) addressed, and you should seek advice based on your particular circumstances from an independent tax advisor. Please contact Paul H. Burnham, Esq. at Rucci, Burnham, Carta, Carello & Reilly, LLP if you have any questions.

Neither this message nor the documents attached to this message are encrypted.

**********************************************************************

**From:** Capote, Ciro (PA) [mailto:ZIR@miamidade.gov]
**Sent:** Tuesday, August 26, 2008 1:21 PM
**To:** Alberto N. Moris
**Cc:** Julio Lago; alago@patitle.cc
**Subject:** RE: Cutler Gardens, A Condominium

Mr. Moris,

I had a chance to go over the Agreement with Unity of Title for Cutler Gardens and its clearly

stated in the document excludes this property from being turned condominium. In other words this

document is not stopping the developer from converting this property to a Condominium whether is a phase or not. If I could be of any further assistance please let me know.

Best regards,

# Ciro Capote, RES, CFE
Real Estate Supervisor
Property Appraisal Dept.
Condominium District
Phone (305) 375-2207
Fax (305) 375-4533
**E-MAIL ZIR@MIAMIDADE.GOV**
*"Delivering Excellence Every Day"*

**This message and any attachments are intended only for the use of the addressee and may contain information that is privileged and confidential. If the reader of the message is not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, notify the sender immediately by return email and delete the message and any attachments from your system.**

**From:** Alberto N. Moris [mailto:AMoris@rucciburnham.com]
**Sent:** Tuesday, August 26, 2008 11:17 AM
**To:** Capote, Ciro (PA)
**Cc:** Julio Lago; alago@patitle.cc
**Subject:** Cutler Gardens, A Condominium

Dear Mr. Capote:

This will confirm that your office has reviewed the issue of the Unity of Title recorded against the above referenced property and that your office agrees that the Unity of Title does not in any way encumber the condominium units presently created as Cutler Gardens, a Condominium regardless of whether Phase II is declared a condominium or not. Although the fact that the adjoining parcel is not later declared a condominium and may indeed effect the marketability of such adjoining parcel, this does not in any way effect the marketability and/or title of the currently declared condominium units now or in the future.

As you are aware, the bank refinancing approximately 200 units is now alleging, we believe quite speciously, that the condominium units are somehow encumbered by the Unity of Title despite a clear exception under the Unity of Title for the creation of one condominium. They counter that if the adjoining parcel is not declared as part of the condominium at a later date as contemplated under that certain Declaration of Condominium for Cutler Gardens, a Condominium, this somehow effects the marketability and/or title of the condominium units already created. We have explained, and your office has agreed, that such a scenario would only effect the marketability and/or title of the adjoining undeclared parcel and would not have any effect whatsoever on the marketability and/or title of the already declared condominium units.

Please confirm you understanding of this so that we may advise counsel for Sun American of the county's position on this matter.

Your prompt attention to this matter is greatly appreciated. Thank you.

Sincerely,

Alberto N. Moris, Esq.
Rucci, Burnham, Carta, Carello & Reilly, LLP
30 Old Kings Highway South
Darien, CT 06820
Tel: 203-899-3333
Fax: 203-655-4302
E-mail: amoris@rucciburnham.com

## Alberto N. Moris

| From: | Alberto N. Moris | Sent: Wed 8/27/2008 12:46 PM |
|---|---|---|
| To: | 'betty@capotepa.com' | |
| Cc: | | |
| Subject: | FW: Cutler Gardens, A Condominium | |
| Attachments: | | |

Dear Betty:

Pursuant to you request, we contacted the County to obtain their position on this matter and attached is their response. We believe this finally puts this matter to rest.

Although we have vehemently disagreed with your assertion that the Unity of Title creates a cloud on the title to the referenced condominium units, a claim on your firm's part which quite frankly is tantamount to a Slander of Title, we agreed to obtain this so as to eliminate any possible doubts raised by these claims which we assert have been made in bad faith. We have jumped this final hoop and are ready to close. Consequently, please provide us with a date of the closing of this deal so that we may proceed accordingly.

Please be advised that failure to close this deal will force our client to seek legal action to enforce its rights under the Loan Commitment Letter (and all amendments thereto) and pursue all actual and consequential damages as a result of your client's breach of such agreement. In this regard, please note that this correspondence does not waive any rights or remedies our clients may have against your client in case of such breach and any right and remedies against any other parties involved in this matter.

Your prompt attention to this matter is greatly appreciated. Thank you.

Sincerely,

Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

**Alberto N. Moris**

| | | | |
|---|---|---|---|
| **From:** | Alberto N. Moris | **Sent:** | Wed 8/27/2008 12:46 PM |
| **To:** | 'betty@capotepa.com' | | |
| **Cc:** | | | |
| **Subject:** | FW: Cutler Gardens, A Condominium | | |
| **Attachments:** | | | |

Dear Betty:

Pursuant to you request, we contacted the County to obtain their position on this matter and attached is their response. We believe this finally puts this matter to rest.

Although we have vehemently disagreed with your assertion that the Unity of Title creates a cloud on the title to the referenced condominium units, a claim on your firm's part which quite frankly is tantamount to a Slander of Title, we agreed to obtain this so as to eliminate any possible doubts raised by these claims which we assert have been made in bad faith. We have jumped this final hoop and are ready to close. Consequently, please provide us with a date of the closing of this deal so that we may proceed accordingly.

Please be advised that failure to close this deal will force our client to seek legal action to enforce its rights under the Loan Commitment Letter (and all amendments thereto) and pursue all actual and consequential damages as a result of your client's breach of such agreement. In this regard, please note that this correspondence does not waive any rights or remedies our clients may have against your client in case of such breach and any right and remedies against any other parties involved in this matter.

Your prompt attention to this matter is greatly appreciated. Thank you.

Sincerely,

Alberto N. Moris, Esq.

Rucci, Burnham, Carta, Carello & Reilly, LLP

30 Old Kings Highway South

Darien, CT 06820

Tel: 203-899-3333

Fax: 203-655-4302

E-mail: amoris@rucciburnham.com

Attorney Moris' Profile:

http://www.rucciburnham.com/attorney/amorris.htm

*********************************************************************

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy this message and notify us immediately by telephone or reply e-mail.

The information set forth in the foregoing message was not intended or written to be used, and cannot be used by any person for the purpose of avoiding federal tax penalties that may be imposed upon the taxpayer. Some of that advice may have been written to support the promotion or marketing or the transactions or matters addressed within the meaning of IRS Circular 230, in which case, be advised that the advice was written to support the promotion or marketing of the transaction(s) or matter(s) addressed, and you should seek advice based on your particular circumstances from an independent tax advisor. Please contact Paul H. Burnham, Esq. at Rucci, Burnham, Carta, Carello & Reilly, LLP if you have any questions.

Neither this message nor the documents attached to this message are encrypted.

*********************************************************************

**From:** Capote, Ciro (PA) [mailto:ZIR@miamidade.gov]
**Sent:** Tuesday, August 26, 2008 1:21 PM
**To:** Alberto N. Moris
**Cc:** Julio Lago; alago@patitle.cc
**Subject:** RE: Cutler Gardens, A Condominium

Mr. Moris,

I had a chance to go over the Agreement with Unity of Title for Cutler Gardens and its clearly

stated in the document excludes this property from being turned condominium. In other words this

document is not stopping the developer from converting this property to a Condominium whether is a

phase or not. If I could be of any further assistance please let me know.

Best regards,

# Ciro Capote, RES, CFE

Real Estate Supervisor
Property Appraisal Dept.
Condominium District
Phone (305) 375-2207
Fax (305) 375-4533
**E-MAIL ZIR@MIAMIDADE.GOV**
*"Delivering Excellence Every Day"*

**This message and any attachments are intended only for the use of the addressee and may contain information that is privileged and confidential. If the reader of the message is not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, notify the sender immediately by return email and delete the message and any attachments from your system.**

---

**From:** Alberto N. Moris [mailto:AMoris@rucciburnham.com]
**Sent:** Tuesday, August 26, 2008 11:17 AM
**To:** Capote, Ciro (PA)
**Cc:** Julio Lago; alago@patitle.cc
**Subject:** Cutler Gardens, A Condominium

Dear Mr. Capote:

This will confirm that your office has reviewed the issue of the Unity of Title recorded against the above referenced property and that your office agrees that the Unity of Title does not in any way encumber the condominium units presently created as Cutler Gardens, a Condominium regardless of whether Phase II is declared a condominium or not. Although the fact that the adjoining parcel is not later declared a condominium and may indeed effect the marketability of such adjoining parcel, this does not in any way effect the marketability and/or title of the currently declared condominium units now or in the future.

As you are aware, the bank refinancing approximately 200 units is now alleging, we believe quite speciously, that the condominium units are somehow encumbered by the Unity of Title despite a clear exception under the Unity of Title for the creation of one condominium. They counter that if the adjoining parcel is not declared as part of the condominium at a later date as contemplated under that certain Declaration of Condominium for Cutler Gardens, a Condominium, this somehow effects the marketability and/or title of the condominium units already created. We have explained, and your office has agreed, that such a scenario would only effect the marketability and/or title of the adjoining undeclared parcel and would not have any effect whatsoever on the marketability and/or title of the already declared condominium units.

Please confirm you understanding of this so that we may advise counsel for Sun American of the county's position on this matter.

Your prompt attention to this matter is greatly appreciated. Thank you.

Sincerely,

Alberto N. Moris, Esq.
Rucci, Burnham, Carta, Carello & Reilly, LLP
30 Old Kings Highway South
Darien, CT 06820
Tel: 203-899-3333
Fax: 203-655-4302
E-mail: amoris@rucciburnham.com